Filed 1/7/22  Limpin v. San Diego Housing Commission CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| KARL T. LIMPIN,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>SAN DIEGO HOUSING COMMISSION,<br><br>    Defendant and Respondent. | D078562<br><br><br><br>(Super. Ct. No. 37-2012-00097925-CU-WM-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Ronald L. Styn, Judge.  Affirmed.

Karl T. Limpin, in pro. per., for Plaintiff and Appellant.

Christensen & Spath, Charles B. Christensen and Joel B. Mason for Defendant and Respondent.

In 2012, Karl T. Limpin filed a petition for writ of administrative mandate (Code Civ. Proc., § 1094.5)[1] in the trial court challenging the decision by the San Diego Housing Commission (Commission) to terminate

---

[1]    Further undesignated statutory references are to the Code of Civil Procedure.

Limpin's eligibility for federally subsidized housing.  In 2014, after more than one year of inactivity in the case, the trial court dismissed Limpin's petition.  More than six years later, in 2020, Limpin filed a motion to reopen the case based on purportedly newly discovered evidence.  The trial court denied the motion, finding Limpin's claimed new evidence was not material, and concluding the case was untimely under the statutes requiring civil actions be brought to trial within five years of filing.  (§§ 583.310, 583.360.)  The court entered a judgment of dismissal.  Limpin moved for reconsideration, and the trial court denied the motion.

Limpin contends the trial court erred by refusing to reopen his case.  For reasons we will explain, we disagree and affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### *Underlying Administrative Proceeding*

In 2005, Limpin began participating in the federal Section 8 subsidized housing program, which the Commission administers locally.

In October 2011, the Commission served Limpin with notice that it intended to terminate his Section 8 eligibility based on (among other things) reports from his landlord that Limpin had generated repeated noise complaints from neighbors that required police action, and that he had an unauthorized person living in his unit.

Limpin belatedly requested a hearing from the Commission, explaining he had "good cause" for his delay inasmuch as he "was placed in immigration custody on Sept[ember] 18, 2011 for [four and one-half] months and could not respond to the [Commission's] notice" any sooner.  The Commission granted Limpin's request.

At the April 11, 2012 hearing, a Commission employee testified and submitted 26 supporting exhibits.  The testimony and exhibits showed

Limpin had generated several noise complaints from neighbors. The employee testified she met with Limpin on August 11, 2011 to discuss the complaints and Section 8 eligibility rules. That same day, the employee spoke with the landlord's property manager, who reported that although "the situation has improved, . . . complaints are still coming in." The property manager also reported that an unauthorized person appeared to be living with Limpin.

The employee testified she spoke with the property manager again on September 21, 2011. The property manager reported "more complaints regarding noise, drinking and foul language by . . . Limpin and his guests." The property manager also reported that "the police were at [Limpin's] unit due to a party that was still going on at 2:00 a.m.," and a neighbor reported that Limpin "left with" police the next morning. After Limpin was taken into custody, the unauthorized person was seen in Limpin's unit on several occasions. The post office confirmed the unauthorized person was receiving his mail at Limpin's address.

In late September, Limpin's landlord served a three-day notice to perform (by removing the unauthorized person) or quit. On October 3, 2011, the landlord filed an unlawful detainer complaint against Limpin.

Limpin testified at the hearing and denied the Commission's allegations. He maintained the landlord's property manager and son were "harass[ing]" him "because they really did not want him to live there."

About two weeks after the hearing, a hearing officer issued a decision upholding the Commission's intended action of terminating Limpin's Section 8 eligibility.

### *Trial Court Proceedings*

On May 23, 2012, about one month after the hearing officer's decision, Limpin (through legal counsel) filed in the trial court a petition for writ of administrative mandate challenging the hearing officer's decision. Limpin attached to his petition several exhibits from the Commission hearing, some of which bore handwritten comments.

The Commission filed an answer asserting numerous affirmative defenses and moved to strike the annotated portions of the petition's exhibits.

In response to the motion to strike, Limpin's counsel explained the handwritten comments were Limpin's, and she was concerned that redacting them would constitute evidence "tamper[ing]." She offered to stipulate that the handwritten notes not be considered part of the record and requested that the court set briefing and hearing dates on the petition.

In reply, the Commission urged the court to grant the motion to strike because Limpin's response was not a true opposition, and Limpin had made no effort to obtain the administrative record, which the Commission had since lodged with the court "independently of any request."

On September 28, 2012, the trial court granted the Commission's motion to strike the annotated portions of the exhibits.

About one year later (on September 20, 2013), after Limpin had taken no action in the case, the trial court issued an order to show cause "why [the] case should not be dismissed" (the OSC). The court set a hearing on the OSC about five months out. Although the court served the OSC on Limpin's counsel of record, Limpin took no action in response.

At the February 21, 2014 OSC hearing, the Commission appeared through counsel, but neither Limpin nor his counsel appeared. Accordingly, on its own motion, the trial court "order[ed] the entire action dismissed

4

without prejudice." The court served a "Notice of Dismissal" on Limpin's counsel a few days later.

### Limpin's Motion to Reopen the Case

Limpin's next activity in the trial court occurred more than six years after the dismissal, in June 2020, when he filed a substitution of attorney replacing his prior counsel without identifying any new counsel.

A few days later, Limpin filed pro se a "motion to reopen civil case" on the basis of newly discovered evidence.[2] The ostensibly new evidence was a July 2015 Department of Homeland Security form that stated, "On July 24, 2011, Limpin was served a Notice to Appear by the Department of Homeland Security." Limpin argued this evidence was material because it showed he was in federal immigration custody beginning July 24, 2011, which showed the Commission's employee lied about meeting with Limpin on August 11, 2011, and the property manager lied in his September 21, 2011 phone call with the Commission employee about continuing to receive complaints about Limpin.

Limpin further argued he was entitled to a new trial and sanctions because the Commission engaged in "litigation improprieties" by failing to produce in discovery "certain evidence or exhibits used in the administrative record." In particular, Limpin cited an exhibit to the hearing officer's decision consisting of a federal form showing Limpin received medical treatment as a federal inmate sometime between September 18, 2011 and

---

[2] Limpin brought his motion under sections 657, subdivision (4) and 662. The former authorizes a new trial on the basis of "[n]ewly discovered evidence, material for the party making the application, which he could not, with reasonable diligence, have discovered and produced at trial." The latter authorizes a court ruling on a new trial motion to instead "reopen the case for further proceedings."

February 6, 2012. Limpin argued this further supported his claim he "was in immigration custody beginning July 24, 2011."

Limpin maintained his motion was timely, despite the passage of more than six years, because his mental health, homelessness, and incarceration during some of the intervening years implicated a variety of tolling doctrines.

The Commission opposed Limpin's motion, arguing the purportedly newly discovered evidence about the dates Limpin was in custody was "discoverable back in 2012 or certainly before the 2014 dismissal by the Court." The Commission argued that instead of reopening the case, the court should "re-dismiss[ ]" it because it was "not brought to trial within five years after it [was] commenced." (See §§ 583.310, 583.360.)

In reply, Limpin argued (among other things) his petition was "brought to trial" within five years by virtue of the fact the Commission filed its answer within five years of his filing of the petition.

On October 16, 2020, after an unreported hearing at which the court heard argument from Limpin and the Commission's counsel, the court denied Limpin's motion on two bases. First, the court found Limpin had not met his burden to show the purportedly newly discovered evidence was "material" because it did "not contain any indication that [Limpin] was in immigration custody during [the referenced] time."

Second, the court denied the motion under the five-year dismissal statutes, observing "[t]here is no indication in the court record that this matter was ever set for trial or called for trial or that a jury was impaneled and sworn," as is required for a matter to have been "brought to trial."

The court entered a judgment of dismissal with prejudice on October 30, 2020.

### *Limpin's Motion for Reconsideration*

A few days before the court entered the judgment of dismissal, Limpin filed a motion for reconsideration. Regarding materiality, Limpin "assert[ed] that it is standard procedure for federal agents . . . to 'simultaneously' issue and execute on the same day, a Notice to Appear" such as the one on which he was relying.

Limpin also raised several procedural arguments. For example, he argued a petition for writ of administrative mandate is a special proceeding that is not a "civil action" subject to the five-year dismissal statutes. He maintained the Commission sought to interfere with his freedom of speech and right to petition for redress of grievances by moving to strike portions of the exhibits to his petition.[3] He also claimed the Commission misled the trial court by filing an answer containing affirmative defenses, which caused the court to " 'make a mistake of thinking this case involved a cause of action or complaint' " rather than a petition.

The Commission countered that "ALL of the facts and/or circumstances and/or law" on which Limpin based his motion for reconsideration were "known to Limpin at the time of his Motion to Reopen," and "[p]resumably . . . known to his former attorney when [the Court] dismissed the case MORE THAN SIX YEARS AGO."

At the outset of his reply brief, Limpin made a significant " 'correction.' " Whereas his motion to reopen was premised on the newly discovered evidence that he was taken into federal custody on July 24, 2011, he now "retracts from [t]his assertion" and "affirms that he was taken into custody . . . on <u>September 18, 2011</u>." He attached an arrest warrant

---

[3]    Limpin characterized the Commission's motion as a special motion to strike under the anti-SLAPP statute (§ 425.16), but the record shows it was a traditional motion to strike under sections 435, 436, and 92, subdivision (d).

confirming the new arrest date. Limpin still maintained the landlord served eviction-related materials while he was in custody.

The trial court denied Limpin's motion for reconsideration, finding he "fail[ed] to establish that he could not, with reasonable diligence, have presented the arguments he now raises and evidence he now submits prior to or at the hearing on [his] motion to reopen." The court also found the five-year dismissal statutes apply to petitions for writ of administrative mandate.

## DISCUSSION

### I. Appellate Principles

The trial court's orders denying Limpin's motion to reopen the case based on newly discovered evidence (§ 657, subd. (4)) and denying his motion for reconsideration (§ 1008) are reviewable on appeal from the underlying judgment, which the trial court entered on October 30, 2020. (See *Zavala v. Arce* (1997) 58 Cal.App.4th 915, 924, fn. 7 [an order denying a new trial is reviewable on appeal from the underlying judgment]; § 1008, subd. (g) ["if the order that was the subject of a motion for reconsideration is appealable, the denial of the motion for reconsideration is reviewable as part of an appeal from that order"].)

"It is a fundamental rule of appellate review that a judgment is presumed correct and the appealing party must affirmatively show error." (*In re Marriage of Khera & Sameer* (2012) 206 Cal.App.4th 1467, 1484; see *Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609.) An appeal is not a second trial. We do not reweigh evidence. (*Curcio v. Pels* (2020) 47 Cal.App.5th 1, 12.) We "resolve all factual conflicts and questions of credibility" in the prevailing party's favor. (*Schild v. Rubin* (1991) 232 Cal.App.3d 755, 762.) And we will affirm the judgment if it is correct on any theory, regardless of

the trial court's reasoning. (*Estate of Beard* (1999) 71 Cal.App.4th 753, 776-777 (*Beard*).)

These appellate principles apply with equal force to self-represented appellants. (*Bianco v. California Highway Patrol* (1994) 24 Cal.App.4th 1113, 1125-1126.)

## II. No Error in Refusing to Reopen the Case

Limpin contends the trial court erred in a variety of ways by refusing to reopen his case. We disagree.

## A. Initial Dismissal

Limpin contends the trial court's initial dismissal of the case in 2014 "was void for lack of due process" because the court (1) improperly struck the administrative record, and (2) "refused to hear the case" despite his counsel's request (in response to the motion to strike) that the court set the petition for hearing. However, these issues are not properly before us because they are not within the scope of Limpin's notice of appeal, which relates only to the trial court's refusal to reopen the case. (*Morton v. Wagner* (2007) 156 Cal.App.4th 963, 967 (*Morton*) ["the notice of appeal . . . defines the scope of the appeal by identifying the particular judgment or order being appealed"]; *In re J.F.* (2019) 39 Cal.App.5th 70, 75 [" 'We have no jurisdiction over an order not mentioned in the notice of appeal.' "].)

Even if these contentions were properly before us, we would find they lack merit. First, Limpin misunderstands the scope of the court's order on the Commission's motion to strike. The court only struck from the petition those annotated pages of the administrative record that Limpin had attached as exhibits. The court did not strike the entire administrative record, which the Commission lodged with the court "independently of any request."

9

Second, the court dismissed the case only after holding a noticed hearing on the OSC. Neither Limpin nor his counsel attended the hearing, nor did they take any action for *six years* after the dismissal. Limpin has not shown he was denied due process. (See *Mohilef v. Janovici* (1996) 51 Cal.App.4th 267, 286 [" '[d]ue process principles require reasonable notice and opportunity to be heard' "].)

## B. Extrinsic Mistake

Limpin contends the Commission's answer to the petition and motion to strike were unnecessary " 'frivolous pleadings' " that misled the trial court into mistakenly striking the administrative record. This contention is beyond the scope of this appeal. (See *Morton, supra,* 156 Cal.App.4th at p. 967; *In re J.F., supra,* 39 Cal.App.5th at p. 75).

But even if the contention were properly before us, we would conclude it lacks merit. First, contrary to Limpin's suggestion, there was nothing improper about the Commission responding to his petition with an answer asserting affirmative defenses. (See *Saint Francis Memorial Hospital v. State Department of Public Health* (2021) 59 Cal.App.5th 965, 973 ["A proceeding in mandamus, including one seeking a writ of administrative mandate under . . . section 1094.5, 'is subject to the general rules of pleading applicable to civil actions.' "].)

Second, as noted above, the court did not strike the administrative record; it struck only certain annotated pages attached as exhibits to Limpin's petition.

## C. Newly Discovered Evidence

The crux of Limpin's appeal is his claim that the trial court erred by refusing to reopen his case on the basis of newly discovered evidence. The claim lacks merit.

10

Limpin based his motion to reopen on the "newly discovered evidence" standard for granting a new trial. (§ 657, subd. (4).) To meet his burden under this standard, Limpin had to show (1) "the evidence is newly discovered," (2) he used "reasonable diligence . . . to find it," and (3) "the new evidence is material to [his] case." (*Santillan v. Roman Catholic Bishop of Fresno* (2012) 202 Cal.App.4th 708, 727-728; § 657, subd. (4).) "Evidence is material when it is likely to produce a different result." (*Santillan*, at p. 728.)

The trial court found Limpin did not satisfy the materiality prong because the ostensibly new evidence did not show what Limpin asserted it showed. That is, while Limpin claimed a federal form showed he was taken into immigration custody on July 24, 2011, thereby contradicting certain Commission evidence about events occurring after that date, the form in fact showed only that a Notice to Appear was issued to Limpin on that date. The form indicated nothing about Limpin's custody status and, thus, did not contradict the Commission's evidence. Indeed, Limpin later retracted his assertion that he was taken into custody on July 24, 2011. Therefore, the trial court did not err in finding the evidence was not material.

But even if the trial court's materiality finding were erroneous, we would nonetheless affirm because Limpin has not shown that the date he was taken into custody was newly discovered or that he exercised reasonable diligence to determine it. (See *Beard, supra*, 71 Cal.App.4th at pp. 776-777 [we will affirm the judgment if it is correct on any theory].) The evidence was not newly discovered because Limpin—the person taken into custody— presumably knew the date on which that event occurred. And Limpin did not show he exercised reasonable diligence because even if he did not know the precise date on which he was taken into custody, he could have ascertained that information before the court dismissed the case in 2014.

11

## D. Five-Year Dismissal Statutes

Limpin additionally contends the trial court erred by finding that the statutes requiring civil actions be brought to trial within five years of filing applied to his petition. He maintains the statutes apply only to "civil action[s]," whereas his petition for writ of administrative mandate is a "special proceeding." We disagree.

Limpin relies on *Binyon v. State of California* (1993) 17 Cal.App.4th 952 (*Binyon*) to support his claim, but *Binyon* actually *rejected* the very same argument Limpin raises here. The trial court in *Binyon* dismissed a petition for writ of administrative mandate based on the petitioner's "failure to bring it to trial within five years of filing." (*Id.* at p. 954.) The appellant relied on subdivision (a) of section 583.120, which states that the chapter of the Code of Civil Procedure containing the dismissal statues "applies to a civil action and *does not apply to a special proceeding* except to the extent incorporated by reference in the special proceeding." (Italics added.) But the *Binyon* court pointed out that subdivision (b) of the same statute allows a trial court to apply the dismissal statutes " 'to a special proceeding' " unless doing so " 'would be inconsistent with the character of the special proceeding . . . .' " (*Binyon*, at p. 955, quoting § 583.120, subd. (b).)[4] The *Binyon* court found nothing inconsistent about applying the dismissal statutes to a petition for writ of administrative mandate and affirmed the dismissal. (*Binyon*, at pp. 955-957; see *Oskooi v. Fountain Valley Regional Hospital* (1996)

---

4       Section 583.120, subdivision (b) states in full: "*Notwithstanding subdivision (a), the court may*, by rule or otherwise under inherent authority of the court, *apply this chapter to a special proceeding* or part of a special proceeding except to the extent such application would be inconsistent with the character of the special proceeding or the statute governing the special proceeding." (Italics added.)

12

42 Cal.App.4th 233, 239 ["*Binyon* is compelling and one must thus conclude section 583.110 et seq. applies to mandamus proceedings."].)

As with the appellant in *Binyon*, Limpin relies on subdivision (a) of section 583.120 without taking subdivision (b) into account. This oversight is fatal to Limpin's challenge.

Limpin asserts *Binyon* is factually distinguishable because the petitioner's delay there was his failure to serve the petition (*Binyon*, *supra*, 17 Cal.App.4th at p. 954), whereas Limpin timely served his petition (and the Commission timely answered). However, merely effectuating service does not constitute bringing a matter to trial for purposes of the dismissal statutes. (See *Bruns v. E-Commerce Exchange, Inc.* (2011) 51 Cal.4th 717, 723 ["A case is brought to trial if it has been assigned to a department for trial, it is called for trial, the attorneys have answered that they are ready for trial, and proceedings begin, even if the proceeding is a motion for judgment on the pleadings. [Citation.] In an action tried to a jury, the action is brought to trial when the jury is impaneled and sworn."].)

Finally, Limpin invokes the public policy favoring adjudication of cases on the merits. However, "that policy coexists with the policy 'that a plaintiff shall proceed with reasonable diligence in the prosecution of an action.' " (*Nye v. 20th Century Ins. Co.* (1990) 225 Cal.App.3d 1041, 1045, quoting § 583.130.)

### E. Motion for Reconsideration

In his notice of appeal, Limpin purports to appeal from the trial court's order denying his motion for reconsideration. However, he does not address this order in his appellate briefing. He has therefore forfeited any challenges to it. (*Christoff v. Union Pacific Railroad Co.* (2005) 134 Cal.App.4th 118,

13

125 ["an appellant's failure to discuss an issue in its opening brief forfeits the issue on appeal"].)

In any event, the record supports the trial court's finding that Limpin failed to meet his burden to " ' " 'provide a satisfactory explanation for [his] failure to produce the [ostensibly new] evidence at an earlier time.' " ' " (*Shiffer v. CBS Corp*. (2015) 240 Cal.App.4th 246, 255; see *Torres v. Design Group Facility Solutions, Inc*. (2020) 45 Cal.App.5th 239, 243 ["If the motion to reconsider is based on new facts, the moving party must provide a satisfactory explanation for its failure to produce the evidence at an earlier time."].)

## DISPOSITION

The judgment is affirmed. The Commission is entitled to recover its costs on appeal.

HALLER, Acting P. J.

WE CONCUR:

DATO, J.

DO, J.

14